**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| IMPLICIT, LLC, | § | |
| | § | |
| *Plaintiff*, | § | CIVIL ACTION NO. 6:17-cv-336-JRG |
| | § | (CONSOLIDATED CASE) |
| v. | § | |
| | § | |
| HUAWEI TECHNOLOGIES USA, INC., et al. | § | JURY TRIAL DEMANDED |
| | § | |
| | § | |
| *Defendants*. | § | |

**IMPLICIT LLC'S RESPONSE TO PALO ALTO NETWORKS, INC.'S
MOTION TO TRANSFER VENUE**

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................. 2

    A.   The Parties ................................................................................................. 2

        1.    Implicit, LLC ................................................................................... 2

        2.    Palo Alto Networks, Inc. ................................................................. 3

    B.   Proceedings to Date in this District ............................................................ 5

III.  ARGUMENT ..................................................................................................... 6

    A.   Legal Standard ........................................................................................... 6

    B.   The Private Factors Weigh Against Transfer ............................................. 6

        1.    The relative ease of access to sources of proof does not support transfer. .................. 6

        2.    The cost of attendance of willing witnesses is neutral. ............................................. 10

        3.    The availability of compulsory process to secure the attendance of witnesses weighs against transfer. ............................................................. 11

        4.    The remaining practical problems that make a trial easy, expeditious, and inexpensive weigh against transfer. ................................................... 12

    C.   The Public Factors Weigh Against Transfer ............................................. 14

        1.    The administrative difficulties flowing from court congestion weigh against transfer 14

        2.    The interest in having localized disputes decided at home is neutral. ......................... 15

        3.    The remaining factors are neutral ..................................................... 15

IV.   CONCLUSION ................................................................................................ 15

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*,
   734 F. Supp. 54, 57 (N.D.N.Y. 1990) ................................................................ 13

*Effectively Illuminated Pathways LLC v. Aston Martin Lagonda of N.A., Inc.*,
   No. 6:11-cv-0034, 2012 U.S. Dist. LEXIS 114502 (E.D. Tex. Apr. 19, 2012) ......... 9

*Eolas Technologies, Inc. v. Adobe Sys., Inc.*,
   No. 6:09-cv-446, 2010 U.S. Dist. LEXIS 104125 (E.D. Tex. Sept. 28, 2010) ......... 15

*Implicit LLC v. NEC Corp. of Am.*,
   No. 6:16-cv-00078 (E.D. Tex.) .......................................................................... 15

*Implicit LLC v. Nokia Solutions and Networks US, LLC*,
   No. 6:16-cv-0079-JRG (E.D. Tex.) ..................................................................... 8

*Implicit Networks, Inc. v. F5 Networks, Inc.*,
   No. 3:10-cv-03365 (N.D. Cal.) ......................................................................... 17

*Implicit, LLC v. F5 Networks, Inc.*,
   No. 3:14-cv-02856, 2015 U.S. Dist. LEXIS 60197 (N.D. Cal. May 6, 2015) ......... 17

*Implicit, LLC v. Huawei Technologies USA Inc.*,
   No. 6:17-cv-00182-JRG (E.D. Tex.) ................................................................ 8, 15

*Implicit, LLC v. Trend Micro, Inc.*,
   No. 6:16-cv-80-JRG (E.D. Tex.) ......................................................... 6, 11, 15, 17

*In re Genentech*,
   566 F.3d 1338 (Fed. Cir. 2009) ......................................................................... 9

*In re Google, Inc.*,
   412 Fed. App'x 295 (Fed. Cir. 2011) ................................................................ 15

*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) ........................................................................ 14

*In re Nintendo Co.*,
   589 F.3d 1194 (Fed. Cir. 2009) ......................................................................... 9

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ......................................................................... 9

*In re Vicor Corp.*,
   493 Fed. Appx. 59 (Fed. Cir. 2012) .................................................................. 16

*In re Vistaprint Ltd.*,
   628 F.3d 1342 (Fed. Cir. 2010) ........................................................................ 16

*In re Volkswagen of Am., Inc.* (*Volkswagen II*),
   545 F.3d 304 (5th Cir. 2008) ............................................................................ 9

*Lake Cherokee Hard Drive Technologies, LLC v. Bass Computers, Inc.*,
   No. 2:10-cv-216-JRG, 2012 U.S. Dist. LEXIS 17749 (E.D. Tex. Feb. 13, 2012) ..... 9

*NovelPoint Learning LLC v. LeapFrog Enterprises, Inc.*,
   No. 6:10-cv-229, 2010 U.S. Dist. LEXIS 128906 (E.D. Tex. Dec. 6, 2010) ......... 10

*Rembrandt Patent Innovations, LLC v. Apple, Inc.*,
   No. 2:14-CV-0015-JRG, 2014 U.S. Dist. LEXIS 105231 (E.D. Tex. Aug. 1, 2014) .......... 5, 10

*Selective Signals, LLC v. Palo Alto Networks, Inc.*,
   No. 17-cv-065 (E.D. Tex.) ............................................................................... 12

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

*SSL Servcs., LLC v. Cisco,*
   No. 2:15-cv-00433-JRG-RSP,  2016 U.S. Dist. LEXIS 22250 (E.D. Tex. Feb. 24, 2016)  14, 18
**Rules**
Fed. R. Civ. P. 45(c)(1)(B)(ii)...................................................................................................... 15

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## I.    INTRODUCTION

PAN's motion should be denied because this dispute has real and significant connections to the state of Texas and this District.  Implicit is incorporated in Texas, has its principal place of business in this state, and is managed from Austin by its Texas-based founder and Manager.  The patents-in-suit are maintained by Texas-based lawyers, who hold the prosecution files in their Texas offices and who may serve as important witnesses in discovery and/or trial.  And, its selective emphasis on its California-based staff notwithstanding, PAN maintains significant operations in Texas, including more than 400 employees and three different facilities within this District.

Efficiency and convenience also favor keeping this case in this District.  This Court has recently presided over a number of actions involving the same plaintiff, patents, and technology at issue here.  Indeed, in one such case, this Court issued claim constructions covering the same two patent families asserted here; heard and resolved motions to strike expert testimony, motions for summary judgment, and a slate of motions *in limine*; and presided over the matter to the very eve of trial.  That recent experience with Implicit and the patents-in-suit leaves this Court in a far better position to preside over this matter to an expeditious resolution.

The remaining factors are either neutral or favor keeping this case in Texas.  For example, PAN's invalidity contentions demonstrate that the witnesses connected to the allegedly invalidating prior art references are spread around the globe, and are not concentrated in any one location.  Moreover, the faster time to trial in this District weighs in favor of keeping this case on its current schedule here, rather than substantially delaying its resolution by sending it to the comparatively slower Northern District of California.  Even the alleged California-based physical location of some of PAN's documents—which electronic discovery renders much less important today than in the past, *see Rembrandt Patent Innovations, LLC v. Apple, Inc.*, No.

1

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

2:14-CV-0015-JRG, 2014 U.S. Dist. LEXIS 105231, at *5 (E.D. Tex. Aug. 1, 2014)—must be viewed as neutral in light of the fact that virtually all of PAN's relevant evidence is stored on third-party cloud-based servers, or on servers that are equally accessible from Texas as they are from anywhere else.  It therefore comes as little surprise that, despite its claims that proceeding with discovery in this District would be inconvenient, PAN recently stipulated to transfer another case from this District to the District of Delaware after having initially sought transfer to the Northern District of California—and having made all the same arguments to this Court regarding convenience, access to proof, and efficiency as in its present motion.

In short, whether or not this case could *also* have been brought in the Northern District of California, that District is assuredly *not* "clearly more convenient" than this District.  PAN's motion should be denied.

## II.     FACTUAL BACKGROUND

### A.  The Parties

#### 1.  Implicit, LLC

Implicit, LLC ("Implicit") is a limited liability company that was originally formed under the laws of the state of Washington.  *See* Declaration of David Dotson ("Dotson Decl.") [D.I. 23-1] at Exh. 2; Declaration of Edward Balassanian in Support of Response to Motion to Transfer Venue ("Balassanian Decl.") ¶ 2.  On March 3, 2017, Implicit registered with the Texas Secretary of State and formally moved its principal place of business to Austin.  Dotson Decl., Exh. 3; *see* Balassanian Decl. ¶ 3.  Implicit is managed by Edward Balassanian, the sole named inventor of the patents-in-suit and a resident of Texas.  *See* Balassanian Decl. ¶ 1.

Implicit has asserted four patents against PAN in this action: U.S. Patent Nos. 8,694,683 (the "'683 patent"); 9,270,790 (the "'790 patent"); 9,325,740 (the "'740 patent"); and 9,591,104 (the "'104 patent") (collectively, the "patents-in-suit").  The patents-in-suit and their related

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

families, including continued prosecution, are currently managed by Dean Munyon of

Meyertons, Hood, Kivlin, Kowert & Goetzel, P.C. in Austin, Texas.  *See* Balassanian Decl. ¶ 6.

Mr. Munyon and his firm hold the file histories relevant to these patents-in-suit in their Austin

offices.  *Id.*  The patents-in-suit belong to two families, which this Court has referred to in past

matters as the "Demultiplexing Patents" (the '683 patent, the '790 patent, and the '104 patent)

and the "Applet Patents" (the '740 patent).  *See* Claim Construction Memorandum Opinion and

Order, D.I. 115 in *Implicit, LLC v. Trend Micro, Inc.*, No. 6:16-cv-80-JRG (E.D. Tex.).

### 2.  Palo Alto Networks, Inc.

Palo Alto Networks, Inc. ("PAN") is a publicly traded company organized under the laws

of the state of Delaware.  *See* https://www.paloaltonetworks.com/company/company-fast-facts;

Declaration of Evan Budaj in Support of Response to Motion to Transfer Venue ("Budaj Decl.")

¶ 8; *id.* Exh. G.  It employs more than 4,500 people worldwide, roughly one-third of which are

located in California.  *See, e.g.*, Declaration of Maya Marcus [D.I. 23-13] ¶ 4.

Although PAN has portrayed itself as a company with virtually no connections to any

District other than the Northern District of California, that is not so.  PAN maintains physical

premises throughout the United States, including three separate facilities within this District, in

Plano, TX.  Budaj Decl. Exh. A at pp. 7–10 (PAN's response to Implicit's Interrogatory No. 3).

PAN employs over 400 people in Texas, more than 300 of whom work out of its Plano, TX

locations, *see id.* Exh. B at PAN-IMPL_2988–3009, including individuals with the titles "Field

Chief Technology Officer", "Principal Security Pro", "Senior Security Architect", and more than

three dozen engineers who appear likely to have knowledge relevant to the Accused Products.

*See id.* Exh. C at PAN-IMPL_2843, 2844, 2856, 2883, 2884, 2887; *id*. Exh. E at 83:19–84:2;

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

87:21–24; 90:22–24; 91:24–82:3.[1]  PAN also employs over 150 account representatives and other salespeople within this District, who are responsible for, among other things, communicating with PAN's customers, distributors, and resellers regarding the accused products.  *See* Budaj Decl. Exh. E at 63:9–15; 65:15–25; 66:20–69:3; 76:16–19; 81:10–25. Other employees provide similar services from PAN's locations in New York, Virginia, and Washington.  Budaj Decl. Exh. A at pp. 7–10.

PAN sells its products, including the accused products, to customers located throughout the United States, including those located in Texas and in this District.  *See* Budaj Decl. Exh. A at pp. 6–7; *id.* Exh. D (spreadsheet referenced in PAN's interrogatory response listing PAN's customers with a United States billing address); *see also id.* at PAN-IMPL_00002798 (total of 1,104 customers in Texas).  PAN does so through a network of distributors, resellers, and service providers—which PAN refers to as its "partners," *see id.* Ex. E at 43:8–22, 48:20–23—that are spread throughout the United States and Texas[2], as well as through its own sales support personnel, which are likewise located within this District and throughout the United States.  *Id.* Exh. A at pp. 10–12.

Although PAN maintains its source code and some of its documents on its servers in Santa Clara, California, that code and those documents are equally accessible to authorized personnel from anywhere in the country, *see* Budaj Decl. Exh. E at 100:11–101:20; 102:22–103:9; 111:19–113:12, and other relevant documents are maintained through third-party cloud-based systems, *id.* Exh. A at pp. 7–10, which likewise are equally accessible regardless of

---

[1] Roughly 40% of PAN's approximately 1,000 non-California employees in the United States are based in Texas, more than 300 of whom work out of PAN's offices and warehouse spaces in Plano.  *See* Budaj Decl. Exh. E at 26:25–28:1; 61:24–25; 81:3–5.

[2] *See* Budaj Decl. Exh. A at pp. 6–7; *id.* Exh. O (spreadsheet showing PAN's Texas-based "key partners" from its most recent "sales kickoff event"); *id.* Ex. E at 43:18–22.

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

location.  *Id.* Exh. E at 115:11–23; 116:17–117:7.  Similarly, the source code for the Accused Products may also be accessed by authorized individuals through a virtual private network, meaning it too is equally accessible from anywhere with an internet connection.  *Id.* Exh. A at pp. 12–13; *id.* Exh. E at 111:19–113:12.

### B.  Proceedings to Date in this District

Implicit brought suit against PAN on June 6, 2017.  Complaint [D.I. 1].  PAN filed the instant Motion to Transfer Venue to the Northern District of California ("Motion" or "Mot.") on September 28, 2017.  Pursuant to the Court's Docket Control Order [D.I. 40 in Case No. 6:17-cv-00182], the parties have exchanged proposed terms for claim construction as well as proposed constructions and have filed their Joint Claim Construction and Prehearing Statement, with all associated claim construction briefing to be completed one month from now, by February 2, 2018.  The *Markman* hearing is scheduled for February 23.  Trial is scheduled to commence in October, 2018.

In addition to this suit against PAN, Implicit has asserted the patents-in-suit against other alleged infringers in recent cases in this District.  Implicit sued Trend Micro, Inc. in February, 2016, and litigated that case through claim construction—which included both patent families and three of the four patents asserted against PAN here—and to the eve of trial in November, 2017.  This Court has also presided over the early stages of Implicit's lawsuits against Huawei, Ericsson, NEC, Nokia, and a second suit against Trend Micro, all of which involved the same patent families asserted against PAN here.  *See Implicit, LLC v. Huawei Technologies USA Inc.,* No. 6:17-cv-00182-JRG (E.D. Tex.); *Implicit LLC v. Trend Micro, Inc.,* No. 6:17-cv-00183-JRG (E.D. Tex.); *Implicit LLC v. Ericsson, Inc.,* No. 6:17-cv-00181-JRG (E.D. Tex.); *Implicit LLC v. NEC Corp. of Am., Inc.,* No. 6:16-cv-0078-JRG (E.D. Tex.); *Implicit LLC v. Nokia Solutions and Networks US, LLC,* No. 6:16-cv-0079-JRG (E.D. Tex.).

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## III.    ARGUMENT

### A.  Legal Standard

A motion to transfer venue should only be granted upon a showing that one venue is "clearly more convenient" than another.  *In re Nintendo Co*., 589 F.3d 1194, 1197 (Fed. Cir. 2009); *In re Genentech*, 566 F.3d 1338, 1342 (Fed. Cir. 2009).  Although the Fifth Circuit does not independently consider the plaintiff's choice of forum as a "paramount" consideration or afford it "great" weight, "it is nonetheless taken into account as it places a significant burden on the movant to show good cause for transfer."  *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 314 n.10 (5th Cir. 2008); *see also In re TS Tech USA Corp*., 551 F.3d 1315, 1320 (Fed. Cir. 2008) (noting that "the plaintiff's choice of venue corresponds to the burden that a moving party must meet in order to demonstrate that the transferee venue is a clearly more convenient venue"); *Effectively Illuminated Pathways LLC v. Aston Martin Lagonda of N.A., Inc*., No. 6:11-cv-0034, 2012 U.S. Dist. LEXIS 114502, at *13 (E.D. Tex. Apr. 19, 2012).  Accordingly, a plaintiff's decision to file in this District "places a significant burden on [Defendants] to show good cause for transfer."  *Volkswagen II*, 545 F.3d at 314 n.10; *Lake Cherokee Hard Drive Technologies, LLC v. Bass Computers, Inc*., No. 2:10-cv-216-JRG, 2012 U.S. Dist. LEXIS 17749, at *16-17 (E.D. Tex. Feb. 13, 2012).

As set forth below, the balance of the private and public factors favor keeping this case in this District, and as such, PAN cannot satisfy its burden of demonstrating that the Northern District of California is "clearly more convenient" than this forum.

### B.  The Private Factors Weigh Against Transfer.

#### 1.  The relative ease of access to sources of proof does not support transfer.

PAN's emphasis on the location of its documents as a compelling reason why this matter should be transferred (Mot. at 8–9) is misplaced for numerous reasons.

6

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

First, although PAN's brief does not say so, it has conceded that the relevant documents and source code maintained on its servers are equally accessible regardless of location, *see* Budaj Decl. Exh. E at 100:11–101:20; 102:22–103:9; 111:19–113:12, and that other potentially relevant documents are stored on third-party cloud-based servers, which are also accessible to anyone with an internet connection, regardless of location, *see* Budaj Decl. Exh. A at pp. 7–10. Due to technological advances, the physical location of evidence is a factor of only minor importance in the venue transfer analysis, *see Rembrandt Patent Innovations, LLC.*, 2014 U.S. Dist. LEXIS 105231, at \*5, and PAN's ability to access that evidence remotely regardless of location renders it essentially meaningless, since that information may be accessed just as easily from this District as any other.

Second, PAN's attempt to minimize Implicit's connections to Texas as having been forged "in anticipation of litigation" is not credible.  Implicit maintains its corporate and other records in Texas, *see* Balassanian Decl. ¶ 4, so to the extent PAN intends to seek production of those corporate and other documents in discovery, their Texas location is a factor that must be considered in the venue transfer analysis.  *See, e.g., NovelPoint Learning LLC v. LeapFrog Enterprises, Inc.,* 6:10-cv-229, 2010 U.S. Dist. LEXIS 128906 (E.D. Tex. Dec. 6, 2010) (plaintiff corporation formed four months before complaint was filed not "recent" or "ephemeral"); *Lake Cherokee Hard Drive Tech. LLC*, 2012 U.S. Dist. LEXIS 17749, at \*14-15 (similar).

Third, numerous third-party sources of proof may be found within this District and the state of Texas.  For example, third party documents regarding Implicit's (and its predecessor, Implicit Networks Inc.'s) product development and licensing efforts are located in Texas.

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Specifically, Implicit Networks Inc. entered into product development agreements and limited licenses with the following Texas entities:

- Raytheon Corporation, which maintains a presence in McKinney, Texas within the Eastern District of Texas;

- Texas Instruments, which is headquartered in Dallas with significant operations in Richardson and Sherman, Texas, in the Eastern District of Texas;

- Advanced Micro Devices' Austin, Texas facility;

- Motorola, Inc.'s Austin, Texas facility; and

- Frog Design's Austin, Texas office.

*See* Balassanian Decl. ¶ 5.  In addition, the patents-in-suit and their related families, including continued prosecution, are currently managed by Dean Munyon of Meyertons, Hood, Kivlin, Kowert & Goetzel, P.C. in Austin, Texas, where all of Implicit's patent prosecution records reside.  *See id. ¶ 6.*  Moreover, Implicit has previously engaged Professors T.S. Eugene Ng of Rice University and Scott Nettles of the University of Texas as technical consultants related to the patents-in-suit.  *Id.* ¶ 7.  As this Court previously found, these E.D. Tex. and Texas-based connections demonstrate that information relevant to the claims at issue and resulting damages may be found here.  *See* Memorandum Opinion and Order Denying Motion to Transfer Venue [D.I. 77 in *Implicit LLC v Trend Micro, Inc.,* Case No. 6:16-cv-0080-JRG (E.D. Tex.)], at 3.

Fourth, PAN maintains three facilities within the Eastern District of Texas, which provide sales and technical support functions relating to the accused products through a robust sales force located in this District and throughout Texas that is responsible for selling its accused products and supporting PAN's customers' use of those products.  *See* Budaj Decl. Exh. A at pp. 6–7; *id.* Exh. B; *id.* Exh. E at 63:9–15; 65:15–25; 66:20–69:3; 76:16–19; 81:10–25.  As part of providing

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

those functions to its clients and customers, PAN maintains an engineering team and technical staff within this District that are responsible for understanding the functionality of the accused products and providing a level of technical expertise beyond what PAN's sales and account representatives are able to provide.  *See* Budaj Decl. Exh. E at 63:9–15; 65:15–25; 66:20–69:3; 76:16–19; 81:10–25; 83:19–84:2; 87:21–24; 90:22–24; 91:24–92:3.  Although PAN attempts to downplay the importance of these facts by arguing that similar facilities exist elsewhere within the United States and internationally (Mot. at 4–5), that concession proves only that PAN's evidence, physical locations, and human assets are spread across the globe, diluting any suggestion of an exclusive connection to the Northern District of California.

Finally, physical locations aside, PAN's claims regarding the burden associated with producing its documents in connection with a Texas-based case should not be accepted at face value.  That is because PAN recently made the exact same arguments, supported by a factual declaration virtually identical to the one it relies on here, in an unrelated case that was brought in this District.  *See* Motion to Transfer [D.I. 17 in *Selective Signals, LLC v. Palo Alto Networks, Inc.*, No. 17-cv-065 (E.D. Tex.) ("*Selective Signals*")], Declaration of Maya Marcus [D.I. 17-1 in *Selective Signals*].  Just as it did here, PAN moved to transfer venue from this District to the Northern District of California, based on its claims that its evidence and witnesses were all located in Northern California, and that it would accordingly be highly inconvenient to continue to litigate the case in this District.  *See id.*  During the pendency of that motion, however, PAN stipulated to transfer the case to the District of Delaware, a jurisdiction that is more than twice as far from PAN's Santa Clara headquarters as this District is.  *See* Budaj Decl. Exh. F.  Of course, Implicit acknowledges that PAN may make whatever strategic litigation decisions it believes are in its best interest.  But PAN's claim that remaining in this District will impose a significant

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

discovery burden cannot be squared with its decision to voluntarily transfer a case ***even further*** from its headquarters when PAN (apparently) believed it was advantageous to do so.

Together, these factual considerations weigh against transfer.

### 2. The cost of attendance of willing witnesses is neutral.

PAN's argument that the location of witnesses "strongly" supports transfer to the N.D. Cal. is based on an erroneously narrow limitation of its analysis to its own witnesses. But in assessing this factor, the Court "considers the convenience of the party and non-party witnesses[,]" and the convenience of the non-party witnesses carries the greatest weight in the analysis. *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co*., 734 F. Supp. 54, 57 (N.D.N.Y. 1990). When given its appropriate scope, this factor does not support transfer.

Implicit is based in Texas and its principal—the inventor of the patents-in-suit—lives here as well. Similarly, Implicit's prosecuting attorneys, who maintain Implicit's prosecution file, are also based in Austin. Balassanian Decl. ¶ 6. The proximity of these key witnesses to the Eastern District cannot be brushed aside merely because they reside in an adjacent Federal District. The burden on these witnesses of traveling to California for trial is every bit as significant as the burden on PAN's Santa Clara-based witnesses of traveling here.[3]

Moreover, the third parties likely to provide relevant testimony are located throughout the country and, indeed, the world—such that it cannot be said that California is "clearly a more convenient forum" for those witnesses. In its Initial and Additional Disclosures, for example, PAN lists five third-party witnesses—***none*** of whom reside in California, and two of whom

---

[3] PAN is also mistaken in its argument (Mot. at 9) that all of its witnesses are located in the Northern District of California. In response to Implicit's venue-based interrogatories, PAN has identified a number of individuals that appear likely to possess relevant information relating to the accused products, and who reside in Texas and elsewhere far from the N.D. Cal. *See* Budaj Decl. Exh. A, pp. 10–12; *id.* Exh. H at PAN_IMPL2525, 2814.

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

reside in Texas.  *See* Budaj Decl. Exh. N at pp. 7–9.  Furthermore, in its invalidity contentions,

PAN listed 48 allegedly invalidating prior art references allegedly authored/created by 127

individuals.  *See id.* Exh. I.  Based on Implicit's investigation, those individuals appear to be

located throughout the country and the world, hailing from Japan, New Zealand, Russia,

Switzerland, Germany, Israel, and virtually every region within the United States.  *See* Budaj

Decl. ¶ 11; *id.* Exh. J.  Accordingly, PAN is mistaken that the Northern District of California is

"clearly" the "more convenient forum" for the relevant third party witnesses.  Mot. at 10.

Because the convenience of these witnesses carries "the greatest weight in the analysis," this

factor is neutral.

3.  <u>The availability of compulsory process to secure the attendance of witnesses weighs against transfer.</u>

Party witnesses normally do not require compulsory process.  *See SSL Servcs., LLC v.*

*Cisco,* No. 2:15-cv-00433-JRG-RSP, 2016 U.S. Dist. LEXIS 22250, *9 (E.D. Tex. Feb. 24,

2016).  The analysis of this factor therefore focuses on third-party witnesses.  *See In re*

*Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1337-38 (Fed. Cir. 2009).

Once again, PAN's analysis of this factor is overly restrictive.  It discusses the apparent

locations of three prior artists (apparently selected because they were the three prior artists whose

prior art was relied upon in Defendant Trend Micro's expert report in case no. 16-cv-080, *see*

Mot. at 11), but omits any discussions of the locations of the remaining 124 alleged prior artists

PAN has included in its invalidity contentions.  *See* Budaj Decl. Exh. I.  PAN cannot avoid the

significance of having relied on these 124 third parties and their alleged prior art in its invalidity

contentions by confining its venue analysis to three cherry-picked California residents.  Mot. at

11.  And, even with respect to the three prior artists it has selectively included, PAN overlooks

that none are truly relevant to this analysis.  First, Trend Micro agreed to drop Kerr as a prior art

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

reference and not assert it at trial.  *See* Budaj Decl. Exh. L.  Second, Dr. Decasper sat for two

depositions in Implicit's case against Trend Micro, and repeatedly stated that he was willing to

travel to the Eastern District of Texas to testify voluntarily at any trial.  *See, e.g.,* Budaj Decl.

Exh. M.  Finally, the Moberg reference is simply not prior art at all, due to the fact that Mr.

Balassanian's actual reduction to practice of the inventions of the Demultiplexing Patents (to

which Moberg has been alleged to be prior art) predates Moberg.  *See* Balassanian Decl. ¶ 8.

PAN also ignores that prosecution counsel for the patents-in-suit resides and works in

Texas and is subject to compulsory process—but not if the case is transferred to California.  Fed.

R. Civ. P. 45(c)(1)(B)(ii).  Accordingly, the lack of subpoena power over the great majority of

PAN's asserted prior artists, together with this Court's subpoena power over the prosecuting

counsel for the patents-in-suit, demonstrate that this factor weighs against transfer.

4.  <u>The remaining practical problems that make a trial easy, expeditious, and
inexpensive weigh against transfer.</u>

"Practical problems include those that are rationally based on judicial economy.

Particularly, the existence of duplicative suits involving the same or similar issues may create

practical difficulties that will weigh heavily in favor or against transfer."  *Eolas Technologies,*

*Inc. v. Adobe Sys., Inc.,* No. 6:09-cv-446, 2010 U.S. Dist. LEXIS 104125 (E.D. Tex. Sept. 28,

2010), *aff'd In re Google, Inc.,* 412 Fed. App'x 295 (Fed. Cir. 2011).  Here, concerns of judicial

economy weigh heavily against transfer.  This Court has extensive and recent experience with

Implicit, its technology, and the patents-in-suit.  It has recently presided over lawsuits brought by

Implicit against five different defendants, one of which was litigated through extensive pre-trial

proceedings and to the eve of jury selection.  *See Implicit LLC v. Trend Micro, Inc.,* Case No. 16-

cv-080 (E.D. Tex.); *see also Implicit LLC v. NEC Corp. of Am.,* Case No. 6:16-cv-00078 (E.D.

Tex.); *Implicit LLC v. Huawei, Inc. et al.,* Case No. 16-cv-00182 (E.D. Tex.).  Those recently

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

filed cases have resulted in Claim Construction Orders construing terms of both patent families at issue here; as well as orders resolving motions to strike expert opinions; denying a motion for summary judgment; resolving a slate of motions *in limine;* and considering the parties' submissions regarding proposed jury instructions, verdict forms, damages calculations, and other important pre-trial pleadings.

Those issues and related questions are highly likely to arise again in this case, and this Court's recent experience adjudicating those disputes and its familiarity with the relevant technology, the claimant, and the patents-in-suit therefore affords it a considerable head start over any transferee forum.  Retaining this dispute thereby furthers the interests of judicial economy and strongly weighs against transfer.  *See, e.g.*, *In re Vicor Corp.*, 493 Fed. Appx. 59, 61 (Fed. Cir. 2012) ("We have held that the existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice. . . . Judicial economy may be served even when two related cases before the same court may not involve the same defendants and accused products.") (internal citations omitted); *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 (Fed. Cir. 2010) ("it is entirely within the district court's discretion to conclude that in a given case the § 1404(a) factors of public interest or judicial economy can be of 'paramount consideration,' and as long as there is plausible support of record for that conclusion we will not second guess such a determination, even if the convenience factors call for a different result.")

The Northern District of California simply does not have the same degree of recent, relevant experience with the patents-in-suit to render this factor "neutral," as PAN suggests. Mot. at 13.  The "*F5I*" case was decided more than four years ago, and did not involve any of the patents currently asserted here (or even the same plaintiff in this case).  *See Implicit Networks,*

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

*Inc. v. F5 Networks, Inc.,* No. 3:10-cv-03365 (N.D. Cal.).  The "*F5II*" case was filed more than

three years ago, and the court's claim construction order cited by PAN is nearly three years old

and construed only a single term of the '683 patent.  *See Implicit, LLC v. F5 Networks, Inc.,* No.

3:14-cv-02856, 2015 U.S. Dist. LEXIS 60197 (N.D. Cal. May 6, 2015).  Respectfully, the

Northern District's experience with Implicit, its technology, and the patents-in-suit is

significantly more dated, less relevant, and less extensive than this Court's.  Accordingly, this

factor also weighs in favor of maintaining this action in the Eastern District of Texas.

### C.  The Public Factors Weigh Against Transfer

> 1.  The administrative difficulties flowing from court congestion weigh against
>     transfer

Time to resolution is an important public factor in the section 1404(a) transfer analysis.

Here, this Court has already noted that the "median time to trial for patent cases in this Court is

shorter, 22.5 months in EDTX versus 31.7 months in NDCA."  *Implicit LLC v. Trend Micro,*

*Inc.,* Case No. 16-cv-0080-JRG, 2016 U.S. Dist. LEXIS 191571, at *12-13 (E.D. Tex. Sept. 1,

2016).  Looking at these same statistics for 2017 year-to-date (as of December 28, 2017)

similarly demonstrates this District's (and this Court's in particular) faster docket: 2017 year-to-

date median time to trial in patent cases was 29.3 in the Northern District of California, 26.4 in

the Eastern District of Texas, and 21.6 in this Court.  *See* Budaj Decl. Exh. K.  Moreover, any

venue transfer would necessarily involve additional delay occasioned by the need to transfer the

docket, assign the case, review the initial pleadings and disclosure statements, schedule a case

management conference, and establish a schedule before the progress of the case may restart.  By

the time this motion is fully briefed, claim construction will be imminent and trial scheduled to

commence in less than a year.  Transferring the case to the Northern District, where the median

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

time to trial is nearly a year longer than here, would substantially delay the final resolution of
this lawsuit.

2.   <u>The interest in having localized disputes decided at home is neutral.</u>

Although PAN emphasizes that it designed the Accused Products in California, that does not
tell the whole story with respect to this public factor.  As set forth above, Implicit is a company
based in Texas that is asserting patents prosecuted, at least in part, by Texas-based prosecution
counsel.  Moreover, while PAN emphasizes the alleged California-based "design" of its products
(Mot. at 3–5, 8–9), that fact offers only "slight[]" support for transfer, *see SSL Servs.,* 2016 U.S.
Dist. LEXIS 22250, at *16, and other relevant aspects—distribution, sales, and manufacturing—
occur throughout the United States and the world and offer no support for transfer at all.
Moreover, PAN has offices in 34 different countries outside the United States, and is a company
of global reach, "serving 45,000 customers in 150+ countries" around the world.  *See*
https://www.paloaltonetworks.com/content/dam/pan/en_US/assets/pdf/corporate/palo-alto-
networks-corporate-backgrounder.pdf; https://www.paloaltonetworks.com/company/locations.
Taken together, Implicit's Texas connections and PAN's disparate, global operations make clear
that the localized interests weigh slightly against transfer or are neutral.

3.   <u>The remaining factors are neutral</u>

Both this Court and the Northern District of California are equally familiar with patent
law, and there are no conflict-of-law issues apparent in this case.  These factors are accordingly
neutral.

**IV.     CONCLUSION**

For the foregoing reasons, PAN's motion to transfer venue should be denied.

15

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Dated: January 2, 2018

Respectfully Submitted,

By:  /s/ William E. Davis, III
William E. Davis, III
Texas State Bar No. 24047416
THE DAVIS FIRM P.C.
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661
E-mail: bdavis@bdavisfirm.com

Benjamin L. Singer
Evan N. Budaj
James Hopenfeld
Adam S. Cashman
Walter C. Pfeffer
SINGER / BEA LLP
601 Montgomery Street, Suite 1950
San Francisco, CA 94111
Telephone: (415) 500-6080
Facsimile: (415) 500-6080
bsinger@singerbea.com
ebudaj@singerbea.com
jhopenfeld@singerbea.com
acashman@singerbea.com
wpfeffer@singerbea.com
***Counsel for Plaintiff***
***Implicit, LLC***

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document is being filed electronically in compliance with Local Rule CV-5(a).  As such, this document is being served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(V).  Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), any counsel of record not deemed to have consented to electronic service will be served with a true and correct copy of the foregoing by email on this 2nd day of January, 2018.

/s/ William E. Davis, III
William E. Davis, III

<u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order (Dkt. 63 in No. 17-cv-336-JRG) entered in this case.

/s/ William E. Davis, III
William E. Davis, III