**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| IMPLICIT, LLC, | § § § | |
| *Plaintiff*, | § § | CIVIL ACTION NO. 6:17-CV-00336-JRG |
| v. | § § § | |
| PALO ALTO NETWORKS, INC., | § § § | |
| *Defendant*. | § § | |

**<u>ORDER DENYING DEFENDANT PALO ALTO NETWORKS, INC'S
MOTION TO TRANSFER VENUE</u>**

Before the Court is Defendant Palo Alto Networks, Inc.'s ("PAN") Motion to Transfer Venue to the Northern District of California (Dkt. No. 23) pursuant to 28 U.S.C. § 1404(a). Having considered the Motion and all relevant authorities, the Court is of the opinion that, for the reasons below, the Motion should be **DENIED**.

**I.   Background**

Implicit, LLC ("Implicit") is a limited liability company that was originally formed under the laws of the state of Washington. (Dkt. No. 33 at 2). On March 3, 2017, Implicit registered with the Texas Secretary of State and formally moved its principal place of business to Austin. (*Id.*) Implicit has asserted four patents against PAN in this action: U.S. Patent Nos. 8,694,683 (the "'683 patent"); 9,270,790 (the "'790 patent"); 9,325,740 (the "'740 patent"); and 9,591,104 (the "'104 patent") (collectively, the "patents in suit"). Implicit notes that the patents in suit have been asserted in other actions before this Court against other parties. (*Id.* at 3).

PAN is "a worldwide provider of a wide suite of enterprise-level next generation firewalls with a diverse range of security features." (Dkt. No. 23 at 4). PAN is headquartered in Santa Clara,

California, and has its principal place of business in Santa Clara, which is within the Northern District of California. (*Id.*) PAN "also maintains sales support centers in . . . Plano, Texas" among other locations, including "31 countries outside of the U.S.," which "provide general sales and technical support for all of Palo Alto Networks' products and services" (*Id.* at 4–5).

## II.   Applicable Law

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of Section 1404(a) is "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge F.B.L.—585*, 364 U.S. 19, 26, 27 (1960)).

The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("Volkswagen I"). Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses, as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203. The public factors are (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict

of laws or in the application of foreign law. *Volkswagen I*, 371 F.3d at 203. These factors are to be decided based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*Volkswagen II*").

While a plaintiff's choice of venue is not an express factor in this analysis, the appropriate deference afforded to the plaintiff's choice is reflected in a defendant's elevated burden of proof. *Id*. at 315. In order to support its claim for a transfer under § 1404(a), the defendant must demonstrate that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *Id*. Absent such a showing, the plaintiff's choice is to be respected.

### III. Analysis

PAN asserts, and Implicit does not dispute, that this case could have been brought in the Northern District of California. (Dkt. No. 23 at 7). PAN concedes that "Palo Alto Networks has its principal place of business in Santa Clara, California and is subject to personal jurisdiction in the N.D. Cal." (*Id.*) With these concessions, the Court agrees that this case could have been properly brought in the Northern District of California, satisfying the threshold requirement for transfer under § 1404(a).

The Court next addresses the applicable private and public interest factors, in turn, and addresses the Parties' arguments as appropriate. As an initial matter, both Parties concede that the public factors relating to familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflicts of law are neutral factors in this analysis. (Dkt. No. 23 at 14; Dkt. No. 33 at 15). The Court agrees and proceeds to consider the remainder of the factors.

### i. The Relative Ease of Access to Sources of Proof

The first private interest factor considering access to sources of proof pertains to where documentary evidence, such as documents and physical evidence, is stored. *See Volkswagen II*, 545 F.3d at 316 (discussing the location of documents and physical evidence relating to a vehicle accident). The critical inquiry "is [the] relative ease of access, not absolute ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2015).

This factor is heavily influenced by which party will likely have the greater volume of evidence and the location where that evidence will come from. *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 767 (E.D. Tex. 2009); *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Generally, in "patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *Id*. (internal quotation marks omitted). The access to sources of proof relates to production of evidence in preparation for trial, *i.e.*, bringing physical materials to the Court for exhibition before the factfinder. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (considering only "physical and documentary evidence" in analyzing the first factor).

As to PAN's sources of proof, this factor looks at where the documents are located—not at where the individuals who are collecting or producing them are, or may be, located. *SSL Servs., LLC v. Cisco Sys., Inc.*, No. 2:15-cv-00433-JRG-RSP, 2016 WL 727673, at *3 (E.D. Tex. Feb. 24, 2016) (quoting *In re Genentech*, 566 F.3d 1338 at 1345 (Fed. Cir. 2009) ("the Federal Circuit has emphasized that the physical location of evidence remains an important consideration in the venue analysis irrespective of the ease with which it can be remotely accessed; else this factor would be 'superfluous'"). As this Court has noted, while "technological advances have significantly lightened the relative inconvenience of transporting large amounts of documents across the

4

country, [] the physical accessibility to sources of proof is still a private interest factor to be considered. Until the appellate courts address this reality, trial courts must continue to apply this factor consistent with current precedent." *SSL Servs.*, 2016 WL 727673 at *3 (citing *Volkswagen II* and *Genentech*).

The Parties have differing views of the location, scale, and weight of the proof to be accessed. PAN argues that its "relevant documents, source code, and other electronic and hard copy data are located at its headquarters in the N.D. Cal., which documents and data are related to the development, design, marketing, product management, sales, and financial reporting for the accused products, as well as hard copy documents and exemplary products," all of which is "material to the issues of non-infringement and damages." (Dkt. No. 23 at 8).

Implicit argues that PAN "has conceded that the relevant documents and source code maintained on its servers are equally accessible regardless of location." (Dkt. No. 33 at 7). However, as discussed, it is not the *accessibility* of the documents but their actual *physical location* (here, where the servers are located). That is the focus of this inquiry. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (where "all of the physical evidence, including . . . the documentary evidence," was "far more conveniently located near the [transferee] venue, the district court erred in not weighing this factor in favor of transfer," even though " many of the documents were stored electronically"). Accordingly, Implicit's arguments regarding the accessibility of PAN's documents from sources outside the Northern District of California are not persuasive.

Implicit submits that it maintains "its corporate and other records in Texas" (specifically, in Austin and not within this District) and that "numerous third-party sources of proof may be found within this District and the state of Texas." (*Id*. at 7). Specifically, Implicit points to

5

"documents regarding Implicit's (and its predecessor, Implicit Networks Inc.'s) product development and licensing efforts" with various Texas entities, located both inside and outside of this District, that "the patents-in-suit and their related families, including continued prosecution, are currently managed by Dean Munyon of Meyertons, Hood, Kivlin, Kowert & Goetzel, P.C. in Austin, Texas, where all of Implicit's patent prosecution records reside."

PAN argues that "to the extent Implicit has moved its documents to Austin earlier this year in anticipation of litigation, those documents should not be considered as part of the Court's transfer analysis." (Dkt. No. 23 at 8–9 (citing *DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 6:13-cv-919-JDL, 2014 WL 6847569, at *3 (E.D. Tex. Nov. 7, 2014)). However, *DSS Tech.* does not stand for such a broad proposition. Implicit maintains its corporate and other records in Texas and maintains its principle place of business in Texas. PAN does not point to an alternative location to which it believes these documents should be more properly attributed. Accordingly, Implicit's Texas location is a factor that must be considered in the venue transfer analysis. *See, e.g., NovelPoint Learning LLC v. LeapFrog Enterprises, Inc.*, 2010 WL 5068146 (E.D. Tex. Dec. 6, 2010) (plaintiff formed four months before filing suit, was organized under Texas law, and had its principal place of business in the EDTX (*1), formation four months before complaint was filed not "recent" under Federal Circuit precedent (*5)). PAN argues further that none of the third-party entities with whom Implicit has licensing agreements with were identified in Implicit's initial disclosures nor has Implicit produced the agreements. However, as Implicit points out, for documents relating to the patents-in-suit and the technology at issue are *prima facie* relevant, as this Court has already recognized. *See Implicit, LLC v. Trend Micro, Inc.*, No. 6:16-cv-00080-JRG, 2016 WL 9245067, at *3 (E.D. Tex. Sept. 1, 2016) (relying on those documents in noting that "[b]oth parties have identified relevant evidence . . . located in or near both EDTX and

NDCA" and finding that "there are greater and more significant sources of proof located in or near EDTX" in holding the factor "weighs against transfer.").

While PAN has demonstrated that more relevant evidence appears to be located in NDCA, both parties have identified significant relevant evidence located in or near both EDTX and NDCA, respectively. Accordingly, this factor weighs only slightly in favor of transfer.[1]

### ii.    Availability of Compulsory Process to Secure the Attendance of Witnesses

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *See In re Volkswagen II*, 545 F.3d at 316. Third-party subpoena power is governed by Fed. R. Civ. P. 45, which, as recently amended in 2013, provides the presiding court with nationwide subpoena power to order third-party witnesses to attend deposition, so long as the deposition is to take place within 100 miles of the witness's residence or regular place of business. Fed. R. Civ. P. 45(a)(2), 45(c)(1)(A); *see VirtualAgility, Inc. v. Salesforce.com, Inc.*, 2:13-CV-00011-JRG, 2014 WL 459719, at *4 (E.D. Tex. Jan. 31, 2014).

PAN submits that "[n]on-party witnesses important to the claims and defenses in this case reside in or near, and are subject to compulsory process with, the N.D. Cal." (Dkt. No. 23 at 11). Specifically, PAN points to three authors of "the prior art references relied upon by Defendant Trend Micro in its invalidity expert report in its litigation against Implicit." (*Id.*) Implicit derides

---

[1] The Court notes that there is an uncertainty as to the relative weight a district court should apply to the various *Volkswagen* factors under controlling Federal Circuit precedent. While the Fifth Circuit has expressly held that "none [of the factors] can be said to be of dispositive weight," *Volkswagen II* 545 F.3d at 315 (quoting *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004)), the Federal Circuit has stated that "the convenience of the witnesses is probably the single most important factor in a transfer analysis," under Fifth Circuit law  *In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017) (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009)).  Injecting additional uncertainty to this inquiry, the Federal Circuit made this statement regarding the convenience of witnesses in the context of evaluating the district court's evaluation of the "locations and sources of proof" factor. *In re Google Inc.*, 2017 WL 977038, at *3.

this as an overly restrictive view, pointing to "the remaining 124 alleged prior artists PAN has included in its invalidity contentions," and the fact that one of the three *Trend Micro* prior art references upon which PAN relies was not asserted in that trial. (Dkt. No. 33 at 11–12). Implicit also points to the "dozens of distributors and resellers of the accused products—which PAN terms 'key partners'—[who are] located in Texas and in this District" and that "other third-party technical advisors and licensees are located within Texas and are subject to compulsory process." (Dkt. No. 37 at 4).

"The venue analysis, by its nature, calls on courts to weigh scenarios that tend to be speculative and conjectural." *Oyster Optics v. Cisco Systems, Inc*., No. 2:16-cv-1301-JRG, Dkt. No. 45 at 7 (E.D. Tex. Dec. 8, 2017) (further noting that "[t]his Court has lost count of the venue motions supported by declarations that Third Party X, located in the transferee venue, is 'vital' to the case, only to see neither hide nor hair of Third Party X when the case comes to trial."). The Court again faces such a speculative inquiry.

It is important to note that PAN does not identify *any* non-party witnesses beyond the three related to the *Trend Micro* case in its argument on this factor. However, PAN has identified in pre-trial disclosures, "five third-party witnesses—none of whom reside in California, and two of whom reside in Texas." (Dkt. No. 33 at 10–11). Further, Implicit has noted a wide spectrum of other prior art authors beyond the three selected by PAN for its argument on this point who may ultimately be called by PAN.

In this case, in light of the fact that each forum is more convenient to some of the identified witnesses, the facts presented by the Parties are such that this factor neither favors nor disfavors transfer. This factor is neutral.[2]

---

[2] The Fifth Circuit has cautioned that, with respect to the *Volkswagen* factors as a whole, it "do[es] not suggest—nor has this court held—that a raw counting of the factors in each side, weighing each the same and deciding transfer only

### iii. Cost and Attendance for Willing Witnesses

The third private interest factor is the cost of attendance for willing witnesses. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. However, as other courts in this Circuit have noted, the convenience of party witnesses is given less weight. *ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, No. A-09-CA-773-LY, 2010 WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010), report and recommendation adopted in A-09-CA-773-LY (Dkt. No. 20) (W.D. Tex. Apr. 14, 2010) ("[I]t is unclear whether Defendant is contending that the transfer would be more convenient for non-party witnesses or merely for their own employee witnesses. If the Defendant is referring to employee witnesses, then their convenience would be entitled to little weight."). *See also Vassallo v. Goodman Networks, Inc.*, No. 5:14-cv-743-DAE, 2015 WL 502313, at *4 (W.D. Tex. Feb. 5, 2015) (noting that the convenience of non-party witnesses is given more weight in the transfer analysis than the convenience of party witnesses); *Summit 6 LLC v. HTC Corp.*, No. 7:14-cv-0014-O, 2014 WL 4449821, at *7 (N.D. Tex. Sept. 10, 2014) (same); *RPost Holdings, Inc. v. StrongMail Sys., Inc.*, No. 2:12-cv-515-JRG, 2013 WL 4495119, at *4 (E.D. Tex. Aug. 19, 2013) (same).

PAN argues that "Here, all of Palo Alto Networks' likely witnesses live in the N.D. Cal., while none lives in or near [the Eastern District of Texas]." (Dkt. No. 23 at 9). Specifically, PAN points to six likely witnesses, all its own employees, who reside in the Northern District of

---

on the resulting 'score,' is the proper methodology." *In re Radmax, Ltd.*, 720 F.3d 285 at 290 n.8 (5th Cir. 2013). The same holds true for an evaluation of any specific factor. Here, where there are some number of third-party witnesses favor each side with no clear imbalance decisively indicating how the factor should be resolved, it is appropriately, neutral. If the Court were to engage in counting, it would invite gamesmanship in an already speculative inquiry, encouraging both sides to over-designate witnesses in an attempt to have a higher "count" than the other.

California. (Dkt. No. 23 Ex. 13 at 2–3). Implicit points to the fact that "[Implicit's] principal—the inventor of the patents-in-suit," Mr. Balassanian, lives in Austin, TX, and Implicit's prosecuting attorneys, who maintain Implicit's prosecution file, are also based in Austin. (Dkt. No. 33 at 10).

PAN argues that the location of these witnesses in Austin does not weigh against transfer as "[t]ravel to Tyler, Texas would thus entail a four-hour-plus drive." (Dkt. No. 36 at 4). The Court agrees that it is not as convenient, perhaps, as a location based in this District, where convenience may be presumed, but the convenience of travel to Tyler from Austin cannot be disregarded compared to travel out of state to San Francisco. The Court notes that while PAN points to what is essentially the door-to-door time of Mr. Balassanian's travel from Austin to Tyler, PAN ignores the head and tail travel time inherent in PAN's proposed "direct flight[] from Austin to San Francisco" in "less than four hours."

Additionally, Implicit notes that it has "previously engaged Professors T.S. Eugene Ng of Rice University and Scott Nettles of the University of Texas as technical consultants related to the patents-in-suit." (*Id*. at 7–8). These consultants are properly evaluated under the third factor, and weigh against transfer.[3]

Given that both sides have identified numerous witnesses in or near either forum,[4] the Court finds that this factor, on the whole, is neutral.

### iv. All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive

---

[3] It appears to the Court that these witnesses are properly classified as willing third-party witnesses with no dispute between the parties as to their nature as such. Accordingly, they are properly considered in the third factor.
[4] For the reasons identified *supra* in Note 2, the Court does not engage in any direct counting comparison of the witnesses identified by the Parties in evaluating this factor.

This final private interest factor pertains to "all other practical problems that make trial of a case easy, expeditious and inexpensive," *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013), including those problems "that are rationally based on judicial economy." *DSS Tech.*, 2014 WL 6847569, at *4.

PAN argues that "[a]lthough this Court has experience with the Patents-in-Suit, the N.D. Cal. likewise has experience, and a compelling showing on the other transfer factors requires transfer regardless of whether the same court is dealing with the same patents in other suits." (Dkt. No. 23 at 12 (citing *In re Verizon Bus. Network Serv. Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011) and *GeoTag, Inc. v. Starbucks Corp.*, No. 2:10-cv-572, 2013 WL 890484 at *6 (E.D. Tex. Jan. 14, 2013)).

However, as Implicit points out, "[t]his Court has extensive and recent experience with Implicit, its technology, and the patents-in-suit. It has recently presided over lawsuits brought by Implicit against five different defendants, one of which was litigated through extensive pre-trial proceedings and to the eve of jury selection." (Dkt. No. 33 at 12 (citing (*Implicit LLC v. Trend Micro, Inc.*, Case No. 6:16-cv-080 (E.D. Tex.); *Implicit LLC v. NEC Corp. of Am.*, Case No. 6:16-cv-00078 (E.D. Tex.); *Implicit LLC v. Huawei, Inc. et al.*, Case No. 16-cv-00182 (E.D. Tex.)). Indeed, this Court has recently construed the Patents-in-Suit. *See Implicit LLC v. Trend Micro, Inc.*, Case No. 2:16-cv-080 (E.D. Tex.) (Dkt. No. 115 (March 29, 2017)).

Retention of this case furthers the interests of judicial economy and thus weighs against transfer. *See, e.g., In re Vicor Corp.*, 493 Fed. Appx. 59, 61 (Fed. Cir. 2012) (non-precedential) ("We have held that the existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice. . . . Judicial economy may be served even when two related cases before the same court may not involve the same

11

defendants and accused products.") (internal citations omitted); *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 (Fed. Cir. 2010) ("it is entirely within the district court's discretion to conclude that in a given case the § 1404(a) factors of public interest or judicial economy can be of 'paramount consideration,' and as long as there is plausible support of record for that conclusion we will not second guess such a determination, even if the convenience factors call for a different result.").

Considering the relevant facts under this factor, and in the light of the Circuit's guidance, this factor weighs against transfer.

### v. Administrative Difficulties Flowing From Court Congestion

The first public interest factor addresses the administrative difficulties flowing from court congestion.

PAN argues that because "[t]his case is currently scheduled to go to trial in October 2018" and "[t]he most recent Federal Judicial Caseload Statistics show that the median time to resolve a case is 7.3 months in the N.D. Cal. and the median time to trial is approximately 23 months," this factor should be neutral. (Dkt. No. 23 at 13). Implicit notes that "2017 year-to-date median time to trial in patent cases was 29.3 in the Northern District of California, 26.4 in the Eastern District of Texas, and 21.6 in this Court." (Dkt. No. 33 at 14).

The Court notes that a "difference in time to trial as material, especially when a transferred case usually 'goes to the back of the line' in relation to the transferee court's existing docket." *Oyster Optics*, 2017 WL 4225202, at *7. This is further exacerbated by the delay transfer generally entails with respect to the ramp-up the transferee court must undertake to permit the case to proceed towards trial.

Taking these facts into consideration, the Court finds this factor to weigh against transfer. *See Net Nav. Sys., LLC v. Cisco Sys., Inc.*, No. 4:11-cv-660, 2012 WL 7827544, at *6 (E.D. Tex.

Aug. 24, 2012), *report and recommendation adopted*, No. 4:11-cv-660, 2013 WL 1309840 (E.D. Tex. Mar. 27, 2013) ("[R]esolution of this case could not occur any sooner following transfer to the Northern District of California, and it is likely that the parties would receive a trial setting significantly after the current trial scheduling of October 7, 2013. Therefore, the Court finds this factor weighs against transfer, since transfer would result in an unknown trial date and a significant delay in a resolution on the merits"); *Oyster Optics*, 2017 WL 4225202, at *7 (same).

      **vi.**     **Local Interest in Having Localized Interests Decided at Home**

The second public interest factor addresses the local interest in having localized interests decided at home.  This factor analyzes the "factual connection" that a case has with both the transferee and transferor venues. *Genentech*, 566 F.3d at 1347.

PAN argues that "the N.D. Cal. has a particular local interest in adjudicating this dispute because Palo Alto Networks is headquartered in that district, all of the relevant design and development activity occurred there, and all of Palo Alto Networks' likely witnesses are located there."  (Dkt. No. 23 at 14).

Finding a local interest in favor of PAN, due to the presence of headquarters or other significant presence in a district, without more, amounts to an argument that "California has a localized interest in resolving this dispute because its jurors will be biased toward the defendant." *Ingeniador, LLC v. Adobe Sys. Inc.*, No. 2:12-cv-805-JRG, 2014 WL 105106, at *4 (E.D. Tex. Jan. 10, 2014).  However, as Implicit does not dispute, there is no local interest in this District based on Implicit's presence or otherwise.  Neither Implicit's presence in the Western District nor its nature as a Texas company impacts this factor.  Accordingly, this factor weighs in favor of transfer.

**IV.**     **Conclusion**

Having considered the governing statute, applicable precedents, and the relevant convenience factors,[5] the Court finds that Defendant has not satisfied its elevated burden to demonstrate that the transferee district is a clearly more convenient forum as to this particular case.[6] Accordingly, Defendant PAN's Motion to Transfer to the Northern District of California, (Dkt. No. 23), is hereby **DENIED**.

Further, PAN's Motion to Stay (Dkt. No. 82) is, accordingly, **DENIED AS MOOT**.

**So ORDERED and SIGNED this 20th day of February, 2018.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[5] The Court recognizes and agrees that, while judicial economy may "play a significant role" in a court's transfer analysis, it may not "dominate" the analysis when other factors of note are present, *In re Google*, No. 2017-107, 2017 U.S. App. LEXIS 4848 at *5, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017).

[6] Summary of factor holdings: (i) access to proof: "slightly in favor of transfer"; (ii) availability of compulsory process: "neutral"; (iii) cost and attendance for willing witnesses: "neutral"; (iv) practical problems: "against transfer"; (v) court congestion: "against transfer"; (vi) local interest: "in favor of transfer"; (vii) familiarity with the law: (agreed) neutral; (viii) conflict of laws: (agreed) neutral.